UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **PEARLIE IRBY,** §<br>   **Plaintiff,** §<br> §<br>**v.** §<br> § **CAUSE NO.:**<br> §<br>**AT & T SERVICE, INC.** §<br>   **Respondent.** §<br> § | |

**PLAINTIFF, PEARLIE IRBY'S,
ORIGINAL COMPLAINT**

Plaintiff, PEARLIE IRBY, file this original complaint and respectfully shows the Court as follows:

**PARTIES**

**1.**     Plaintiff, PEARLIE IRBY, hereinafter referred to as, "IRBY", "Plaintiff", or "employee"' referred to collectively as "the Parties", is an individual residing in Ouachita Parish, Louisiana.

**2.**     Respondent, AT& , INC., hereinafter referred to as, "AT&T", "Respondent", or "employer", and referred to collectively as "the parties", is an employer within the meaning of the Tex. Labor Code §21.002(8) (West 2009) and Title VII of the Civil Rights Act of 1964, as amended in 42 U.S.C. §2000e et seq.  Respondent, AT&T, INC.,  is a company authorized to do business in the State of Texas that may be served with process

by service upon its authorized agent, C.T. Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3. Plaintiff is a citizen of the State of Louisiana and resides in Ouachita Parish, Louisiana. Plaintiff was a former employee of Respondent's.

4. This Court has original jurisdiction of this matter under 28 U.S.C. §1331, §1332(a), and §1343(a). Respondent is a foreign corporation, conducting business in the State of Texas.

5. Damages prayed for by Plaintiff exceed $75,000, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims arose in Dallas County, Texas, within the Northern District of Texas.

## JURY DEMAND

7. Plaintiff demands a jury trial on all triable issues asserted in this matter and have tendered the appropriate fee, pursuant to Federal Rule of Civil Procedure 38.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff, IRBY, filed a charge of discrimination with the meaning of the United States Equal Employment Opportunity Commission ("EEOC") within the

appropriate time period from the occurrence of the acts or omissions, which IRBY complains of, pursuant to 42 U.S. Code § 2000e *et seq*.

9. On February 25, 2021, the EEOC mailed a "Notice Suit Rights" letter to IRBY, informing Plaintiff of her right to file a lawsuit. All conditions precedent to the filing of this suit have been fulfilled.

**FACTS**

8. In January 1996, Plaintiff, PEARLINE IRBY, an African American woman, was hired by Respondent, AT&T. Prior to accepting employment with AT&T, Plaintiff was an honorably discharged veteran of the United States Navy and a former teacher for Dallas County Community College District, now known as, "Dallas College."

9. Respondent is engaged in the business of providing interstate and international, wired, wireless and satellite telecommunication products, services and support services to businesses and individual consumers. Respondent is a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

10. In April 1997, Tony Walter, the white, Area Manager for Plaintiff's workgroup, phoned me to insist I come to his office for a discussion. When I arrived at his office, I was escorted into his office by Tony and Robert "Bob" Gehrman, my white, the

District Manager. Bob entered Tony's office behind Plaintiff, positioning himself between her and the door. Plaintiff felt uncomfortable and had no idea what the meeting was for.

11. Tony then asked Plaintiff why she took the "Fundamental" or "FMT" test which was a requirement for teaching at Respondent's Center for Learning (CFL). If I was offered a position as a teacher, Plaintiff would leave Bob's department and work for the Staff Support Department. During this meeting, Plaintiff was subjected to intimidation, coercion, and harassment, as Tony and Bob threatened and coerced Plaintiff not to seek a position in Staff Support by insinuating that they would communicate to their friends who were managers at Staff Support and discourage them from hiring Plaintiff, and also implying that Plaintiff's career with AT&T would be jeopardized if she attempted to leave Tony's group or Bob's department. They also threatened that if she did leave, they would make sure she wouldn't get a job if she tried to transfer back to Bob's department. Respondent's illegal conduct was based on Plaintiff's race and sex, and deliberately and intentionally carried out to deprive Plaintiff of her employment rights.

12. Respondents further deprived Plaintiff of her civil rights and employment benefits, rights and privileges by creating a position with equal pay as the teaching position, which, according to AT&T policies at the time, disallowed Plaintiff from accepting a position in another Department of equal or lesser pay than an open position in Plaintiff's current department.

13. There were several other incidents of racial and sexual harassment and violations of my employee benefits after this initial incident. Plaintiff was fired on May 4 2018 under the pretense that she was placed on the surplus list, meaning she would be terminated if she did not find another job with Respondent that she was qualified for.

14. In 2003 Ron Stevens, a white Director, told Plaintiff he would not give Plaintiff a higher raise because he had to give William (Bill) Steed, a white employee, more money because he had a family to support. Plaintiff, who is a single mother also has a family to support.

15. In April 2004, Plaintiff was diagnosed with cancer. Bill Durant, Director of Broadband Growth and Maintenance Engineering, emailed everyone Plaintiff worked with notifying them that Rosalie Spinelli would be the Area Manager for the Growth Group and would now be handling all 13 states for ASI because I was being replaced "because I had cancer." Bill sent this email to each of Plaintiff's direct coworkers. Plaintiff did not authorize Durant to reveal her medical condition to her coworkers and definitely did not authorize sending the email.

16. Prior to Plaintiff's replacement by Spinelli, Plaintiff was lead to believe she would become the Area Manager for all thirteen states because Spinelli was leaving her position. Respondent sent Plaintiff to California on two separate trips for her to meet

Spinelli's team and discuss concerns and issues. Plaintiff met both managers and non-management team members to review their processes and work requirements.

17. Stevens later acknowledged that he was aware that Bill Durant was going to replace Plaintiff as the Area Manager over the Growth group because of Plaintiff's medical condition.

18. Respondent intentionally and knowingly discriminated against Plaintiff because of her race and medical condition and used her to train an employee so that Respondent could ultimately surplus and terminate Plaintiff.

19. Another incident occurred on February 6, 2017, Marty Loman, a Fourth Line (manager), emailed Plaintiff to notify her that she would be working for Susan John, a white woman, beginning on that day.  Plaintiff was intentionally and routinely given assignments and tasks she had not been trained to do and after bringing that to the attention of her managers and supervisors, she would not receive any training.  The other white members of the team did receive proper training.

20. In December 2017, Susan John's gave an annual review stating that I had "Limited Impact" for the company's bottom line.  This negative review ultimately caused Plaintiff to be unfairly placed on the surplus list, which meant Plaintiff would be terminated.  Respondent continued the unlawful discriminatory conduct and refused to interview Plaintiff for positions for which she was well qualified.   Respondent posted over

125 jobs within AT&T in the Dallas/Ft Worth Area, some of which Plaintiff applied for and was well qualified for, and she did not receive a single interview.  Advertising for a job for which you have surplus employees is not the normal process. Respondent's customary practice was to look internally for employees to fill those positions. Despite Plaintiff's years of experience, there were many other jobs for which she was qualified, yet, she never received and opportunity to interview for any of those jobs.

## CLAIMS

### A. Discrimination/Disparate Treatment

21. All paragraphs are hereby incorporated herein by reference. Plaintiff has been subjected to incidents of discrimination based upon his race and color by Respondent, in violation of the Texas Human Rights Act, Tex. Labor Code §21.051 et al including §21.122 (Vernon 2002). As the Texas Human Rights Act is based on Title VII of the Civil Rights Act of 1964, amended, this Court may also consider analogous provisions contained in Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. §2000e et seq.

22. IRBY is therefore entitled to any and all remedies for Respondent's unlawful employment practices as set forth under the Texas Commission on Human Rights Act ("TCHRA"), section 21.2585 of the Texas Labor Code (Vernon 2002), and Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. §2000e et seq. Accordingly, Plaintiff

seeks monetary compensation in an amount to be determined by the jury, and punitive damages.

23. In addition to monetary compensation set forth above, Plaintiff has had to engage an attorney in connection with these claims and seeks his reasonable and necessary attorney's fees and costs.

**B. Retaliation**

24. From April 2004 through the end of his employment with AT&T, Plaintiff opposed the unlawful employment acts of Respondent AT&T. Plaintiffs reports of the discrimination by Lohan, Johns and others resulted in Respondent AT&T placing Plaintiff on the surplus list and terminating Plaintiff's employment.

25. AT&T's retaliatory acts violated the TCHRA, §21.055 of the Texas Labor Code, as well as the analogous provisions contained in Title VII of the Civil Rights Act of 1964, a amended. *See* 42 U.S.C. §2000e *et seq.*

26. Accordingly, Plaintiff is entitled to all relief and remedies for Respondent AT&T's unlawful employment practices as set forth under the TCHRA, §21.2585 of the Texas Labor Code, and Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. §2000e *et seq.* Accordingly, Plaintiff seeks monetary compensation in an amount to be determined by the jury, and punitive damages.

27. In addition to monetary compensation set forth above, Plaintiffs have had to hire attorneys in connection with these claims and incurred reasonable attorney's fees and costs.

### C. Intentional Infliction of Emotional Distress

28. The Respondent's conduct caused Plaintiffs to suffer from severe emotional distress. This type of intentional behavior in the workplace is not the type of conduct tolerated in a civilized society. Respondent's actions were egregious and the type of conduct for which this State allows punitive and/or exemplary damages to be awarded. Accordingly, Plaintiff seeks compensatory and punitive damages as allowed under chapter 41 of the Texas Civil Practice and Remedies Code, for the commission of this intentional tort independent of the discrimination Plaintiff endured and suffered.

29. In addition to monetary compensation set forth above, Plaintiffs have had to engage an attorney in connection with these claims and seeks his reasonable and necessary attorney's fees and costs.

### D. Negligent Hiring/Supervision/Investigation

30. The unlawful, discriminatory acts of Plaintiff's directors, managers, and supervisors was conducted with knowledge imputed to AT&T. AT&T was aware of the conduct and failed to take any remedial measures to prevent incidents of discrimination. Under Texas law, an employer is liable for negligent hiring and retention when the employer knows, or through the exercise of reasonable care, should have known an

employee hired or retained was incompetent or unfit. AT&T failed to take measures to prevent future incidents of discrimination.

31. Additionally, the remedial steps undertaken by AT&T regarding Plaintiff, was mere pretense designed to justify Respondent's unlawful conduct.

32. These causes of action arise not only from the Respondent's unlawful employment practices, but also its failure to act and its investigation. As a result, Plaintiffs have been directly injured. Therefore, Plaintiffs are entitled to any and all remedies available, including compensatory and punitive damages, as set forth under Chapter 41 of the Texas Civil Practice and Remedies Code (Vernon 2002).

33. In addition to monetary compensation set forth above, Plaintiffs have had to hire an attorney in connection with these claims and seeks her reasonable and necessary attorney's fees.

## VII.
## DAMAGES

34. Respondent's wrongful conduct proximately caused severe and ongoing damages to Plaintiffs. The sudden wrongful loss of income and benefits resulted in financial devastation, bankruptcy and destroyed Plaintiffs' credit. Respondent's wrongful acts have caused an incredible amount of stress, emotional distress and mental anguish and interference with their daily lives and the relationships of the Plaintiffs. The height of

the stress paralyzed family relations and interfered with most all aspects of the Plaintiffs lives.

35. Damages to Plaintiffs include, but are not limited to lost wages/ back pay plus benefits, front pay, compensatory damages to Plaintiffs pursuant to Texas Human Rights Act Section 21.2585 and 42 U.S.C. §2000e *et seq.,* other compensatory damages including past, present and future psychological and mental anguish; punitive and/or exemplary damages to Plaintiffs as allowed by law; loss of consortium, all reasonable and necessary attorney's fees, expert fees, and expenses incurred by Plaintiffs regarding this lawsuit; pre and post judgement interest at the highest rate allowed by law; and any other damages or remedies to which Plaintiffs may be entitled.

## PRAYER

36. WHEREFORE, premises considered, Plaintiffs request a judgment against Respondent for compensatory damages to Plaintiffs, including lost wages/back pay plus benefits, front pay and all other compensatory damages; compensatory damages to Plaintiffs pursuant to Texas Human Rights Act Section 21.2585 and the corresponding provisions of 42 U.S.C. §2000e *et seq.;* compensatory damages to Plaintiffs, including past, present and future psychological and mental anguish; punitive and/or exemplary damages to Plaintiffs as allowed by law; all reasonable and necessary attorney's fees, expert fees, and expenses incurred by Plaintiffs regarding this lawsuit; pre and post

judgment interest at the highest rate allowed by law; and any other damages or remedies to which Plaintiffs may be entitled.

                Respectfully submitted,

                /s/Charles A. Caldwell
                Charles A. Caldwell
                State Bar No. 24015186
                Law Offices of Charles A. Caldwell
                P.O. Box 601174
                Dallas, TX 75360
                Telephone: (214) 431-5838
                Facsimile:  (214) 431-4290
                ATTORNEY FOR PLAINTIFF